IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT GONZALES,

    Plaintiff,

v.                                           CIV No. 09-21 JH/RLP

MIKE MARQUEZ, BRIAN SANCHEZ,
RENEE DOLAN, in their individual and official
capacities, as police officers, and the CITY OF
ALBUQUERQUE, et al.,

    Defendants.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY UNDER THE FOURTH AMENDMENT FOR THE INITIAL FALSE ARREST

Plaintiff, in support of his motion for partial summary judgment as to liability against MIKE MARQUEZ and BRIAN SANCHEZ ("Albuquerque police officers") for false arrest in violation of the Fourth Amendment, states:

*Introduction*

Defendants MIKE MARQUEZ and BRIAN SANCHEZ are officers and detectives of the Albuquerque Police Department ("APD") who directed and caused the arrest of Plaintiff Robert Gonzales, and then conducted the custodial interrogation of the developmentally-disabled Plaintiff, without probable cause to believe he had committed a crime.

STATEMENT OF MATERIAL FACTS

1. The sole basis for detaining Robert Gonzales in connection with the rape and murder of Victoria Sandoval in the Westgate area of Southwest Albuquerque was the statement of

1

another eleven-year-old girl that she had seen someone possibly nicknamed "Old School" hugging Victoria outside her home at some time in the past, and that this same person had possible annoyed a couple of other girls – not the victim – at a large public swimming pool in Albuquerque several months earlier. **Exhibit 1: Testimony of APD Detective Heather Hindi on May 2, 2008, State v. Gonzales, pp. 98-99; Exhibit 2: Testimony of APD Officer Renee Dolan on May 2, 2008, State v. Gonzales, pp. 101-102.**

2. An APD officer assigned as a school resource officer to West Mesa High School remembered former 'special ed' student Robert Gonzales as having used the nickname "Old School". **Exhibit 3: Testimony of APD Officer Troy Baldonado on May 2, 2008, State v. Gonzales, pp. 6-7.**

3. On that basis, Robert Gonzales was placed under surveillance and on November 3, 2005, was followed as he headed into West Mesa High School to visit a former counselor. **Exhibit 3: Testimony of APD Officer Troy Baldonado on May 2, 2008, State v. Gonzales, p. 8.**

4. APD officers detained Robert Gonzales at the High School as he left the school counselor's office. **Id.**

5. There was not sufficient evidence to seek or obtain a warrant to arrest Robert Gonzales at that time. **Exhibit 4: Testimony of APD Detective Brian Sanchez on May 2, 2008, State v. Gonzales, p. 36; Exhibit 8: Responses to Requests for Admission, Admission 16.**

6. There was no probable cause to arrest Robert Gonzales at that time. **Exhibit 4: Testimony of APD Detective Brian Sanchez on May 2, 2008, State v. Gonzales, p. 46.**

7. The prosecutor on the case for over two years, presumably a legal expert in Fourth Amendment analysis, agreed in open Court that there was no probable cause to arrest Robert Gonzales at that time. **Id., p. 46.**

8. Even though there was no arrest warrant and no probable cause to arrest Robert Gonzales, at the direction of the Defendant officers, APD officer Aaron Holmes handcuffed Robert Gonzales at West Mesa High School, placed him in an APD police car, and drove him away from the school. **Exhibit 3: Testimony of APD Officer Troy Baldonado on May 2, 2008, State v. Gonzales, pp. 9 and 15.**

8. Officer Holmes took Robert Gonzales to the Albuquerque Police Department Crimes Against Children Unit to meet with Defendants Sanchez and Marquez, where Mr. Gonzales was handcuffed to a post in the interrogation room for interrogation by Detectives Sanchez and Marquez. **Exhibit 5: Testimony of APD Officer Mike Marquez on May 2, 2008, State v. Gonzales, p. 27; Exhibit 4: Testimony of APD Detective Brian Sanchez on May 2, 2008, State v. Gonzales, p. 86; Exhibit 8: Responses to Requests for Admission, Admission 17.** When the videotaped statement begins, Robert Gonzales is handcuffed to a pole. **(See attached "screen shot" photo from videotape, attached as Exhibit 9).**

9. In their Answer to this Complaint, Defendants admit that "Plaintiff was taken into police custody on November 3, 2005 by APD Defendants at West Mesa High School, that he was transported to an APS substation and handcuffed to a pole." **Answer at paragraph 7; see also Exhibit 8: Response to Requests for Admission, Admission 14.**

10. Mr. Gonzales was not free to leave. **Exhibit 8: Admissions 15, 18, 26 and 28.**

11. Toward the end of the interrogation by Defendants Marquez and Sanchez, Mr.

Gonzales asked for permission to go to the bathroom and was told to remain in the room. **Exhibit 6: Tape 2 of Interrogation of Robert Gonzales at counter 23-50.** The room was locked when Robert Gonzales was left alone in the interrogation room.

12. Presiding over the criminal charges against Mr. Gonzales, which were eventually dismissed for lack of probable cause and lack of evidence, a State District Judge from the Criminal Division ruled that "no later than when Gonzales was escorted into the investigation room and handcuffed to the pole, there was an "arrest". **Exhibit 7: <u>Order Granting Motion to Suppress</u>, State v. Gonzales, D-0202-CR-2005-05254 (May 22, 2008), at p. 5.**

13. The District Criminal Judge agreed with the prosecution and defense that the seizure of Robert Gonzales had occurred without probable cause. **Id. at p. 3.**

14. After finding that the arrest was illegal under the Fourth Amendment, the criminal court also suppressed the alleged "confession" of Robert Gonzales on the additional ground that it was coercively obtained without a knowing and voluntary waiver of <u>Miranda</u> rights. **Id., p. 10.**

MEMORANDUM

On November 3, 2005, based on a tip that someone nick-named "Old School" had been seen hugging the murder victim at some point in the summer months in 2005, Robert Gonzales was stopped and detained at West Mesa High School. He was handcuffed, and transported to a police facility. At the police facility, he was handcuffed to a pole in a secure room not open to the public that was equipped with a hidden video camera, for custodial interrogation. There Defendants Marquez and Sanchez exploited Plaintiff's mental and developmental deficiencies to coerce a false "confession" from him, which was used to obtain an indictment.[1] On May 22,

---

[1] Counsel will assume for purposes of this motion that the word "confession" is applicable to the videotaped statement provided by Plaintiff, but does not agree that the statement represents a knowing confession to the murder

4

2008, the state court granted a motion to suppress the false confession, finding the arrest illegal, the interrogation coercive, and noting the "apparent paucity of the evidence in support of the indictment". **See Exhibit 7.**

*Section 1983 claims*

Robert Gonzales was arrested. Whether the intent was to question him or to formally arrest him makes no difference to him, nor to the Fourth Amendment. The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest. *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th CIR. 1994). Warrantless arrest is permissible if there is probable cause to believe that a person has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed. *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004). Here, APD Defendants admit they did not have probable cause, with which the prosecutor agreed, and the District Judge then found.

Arresting officers had a tip possibly connecting Robert Gonzales with the victim sometime the previous summer, but absolutely nothing connecting Robert Gonzales with the crime; this was not "probable cause". A minor child's identification requires some additional pre-arrest investigation or corroboration. *See, e.g. Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007). There was none here. The constitutional infirmity is not cured by inducing an intellectually disabled man, who will cheerfully agree with most suggestions, to "confess" to a heinous crime. To the contrary, as the New Mexico district court found here, applying *Brown v.*

---

that was being investigated.

*Illinois*, 422 U.S. 590 (1975), an arrest without probable cause is a Fourth Amendment violation and a subsequent confession is tainted and must be suppressed.

When police officers arrest and imprison a person without probable cause, and then present false or fabricated testimony or conceal material facts in order to induce prosecution and detention of the Plaintiff, they are liable for damages under 42 U.S.C. § 1983. This is well-established law for which there is no "qualified immunity". *Wilkins v. DeReyes,* 528 F.3d 790, 805 (10th Cir. 2008) ("it of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment's proscription against unreasonable searches and seizures.")

It makes no difference whether senior officers were not present when Mr. Gonzales was first picked up. *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (rejecting claim by lieutenant and detective that they were not liable for search of home without probable cause because they were not present: they obtained the warrant and ordered the search).
A defendant may be liable if an affirmative link exists between the deprivation and either the officer's personal participation, his exercise of control or direction, or his failure to supervise. *Id.* That showing can be made with deliberate, intentional acts that caused or contributed to the violation. *Id.* At any rate, Defendants here have not disputed they arrested Plaintiff. *See* Facts 8-10, above.

Finally, Defendants cannot shift blame to the district attorney. While decisions to charge or retain Gonzales in custody may have been made by the district attorney, such decisions do not constitute an "independent intervening cause", nor clothe the officer's conduct in prosecutorial

immunity. *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990). When a prosecution has been initiated by fraudulent testimony elicited by police officers, the prosecution depends on the officer's misconduct and does not constitute an independent, intervening cause. *Id.*

> A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial--none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.... If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded. *Id.* at 656; *quoting Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988).

Moreover, police officers have a continuing duty post-arrest to release a suspect when the officer learns the arrest was unfounded. Thompson v. Olson, 798 F.2d 552 (1st Cir. 1986). These officers were aware verbally that the DNA evidence established that they had the wrong person in custody on about the 22nd day of Plaintiff's 997 days in pre-trial detention, and by written reports not long into 1996. These officers also were aware, or should have been, that they could not fit the crime scene physical evidence to the so-called "confession".

CONCLUSION

The warrantless arrest of Robert Gonzales lacked probable cause as a matter of law and violated the Fourth Amendment. The officers are liable for all damages flowing from the illegal arrest.

WHEREFORE Plaintiff requests the Court to grant his Fourth Amendment motion and determine as a matter of law that Albuquerque police officers are not entitled to qualified immunity on the Fourth Amendment false arrest claim, enter partial summary judgment against

the Albuquerque police officers a as to liability under Count I of Plaintiff's complaint, set for trial the matter of all damages which flowed from these violations, and grant any other and further relief the Court deems just and proper.

LAW OFFICE OF BRAD D. HALL

*Electronically filed 09/14/09*

BRAD D. HALL
Attorney for Plaintiff
3612 Campus Blvd. NW
Albuquerque, NM 87106
(505) 255-6300
Fax: (505) 255-6323

I certify that a copy of the foregoing was
mailed to counsel for these Defendants
this 14th day of September, 2009, with a courtesy copy to
counsel for each other party, while also placing this motion and memorandum into the Court's
electronic dissemination system to digitally distribute copies.